Chief Judge Breitel.
Defendant-appellant was adjudicated a youthful offender upon his plea of guilty to attempted criminal possession of a dangerous drug in the sixth degree (Penal Law, §§ 110.00, 220.05). He was sentenced to 90 days’ imprisonment.
Defendant, a 17-year-old high school student, contends that drugs taken by a teacher from his wallet when he was searched in the principal’s office were obtained illegally. The teacher was also the school co-ordinator of security.
The adjudication should be vacated and the complaint dismissed. High school students are protected from unreasonable searches and seizures, even in the school, by employees of the State whether they be police officers or school teachers. Moreover, the previous equivocal conduct of defendant and the imprecise nature of the information allegedly provided by a “ confidential source ” were insufficient to warrant the search and seizure.
Defendant was observed by a teacher, twice during the same morning within one hour, entering a toilet room in the school with a fellow student and both exiting within 5 to 10 seconds. One of the fellow students re-entered the toilet room and remained there for some time. These occurrences were reported by one teacher as ‘ ‘ unusual behavior ’ ’ to another teacher serving as co-ordinator of school security. Defendant had been under observation for six months for “ possible dealing with drugs, based on information received from confidential sources ”. During this period he had been once observed having lunch with another student also under suspicion. The security co-ordinator informed the principal of the reported “ unusual behavior ” and *486 was instructed to bring defendant to the principal’s office. There, in the presence of a boys’ dean and the principal, clef end-ant was searched by the security co-ordinator, and after discovery in his wallet of 13 glassine envelopes containing a white powder, made to strip. Also found on defendant was a vial containing nine pills.
Defendant’s motion to suppress the evidence obtained in the search was denied and he thereafter pleaded guilty and was adjudicated a youthful offender. The Appellate Term affirmed the denial of the motion to suppress and the adjudication of defendant as a youthful offender.
Public school authorities have special responsibilities, and therefore correspondingly broad powers, to control the school precincts in order to protect the students in their charge (see, e.g., Education Law, § 912-a, subd. 1; § 3214, subd. 3, par. a). The obligation to maintain discipline and provide security derives from State law and is delegated by local boards of education (see, e.g., Education Law, § 1604, subd. 9; § 1709, subd. 2; § 2590-e, subd. 8; § 3214, subd. 3, par. b). In exercising their authority and performing their duties, public school teachers act not as private individuals but perforce as agents of the State (see People v. Overton, 24 N Y 2d 522, 525-526; cf. Education Law, §§ 3028, 3028-a; see, generally, Ann., Searches By School Officials—Validity, 49 ALR 3d 978).
To the extent that public school teachers are responsible for the education, discipline and security of their charges, they are, to a degree like parents. It is not true, however, that school teachers possess all the parental prerogatives. For example, public school teachers, unlike parents, are limited, if not precluded entirely, by the First Amendment and the State Constitution in the type of “ religious ” or “ political ” activity in which students may be required to participate (Engel v. Vitale, 370 U. S. 421 [school prayer]; Board of Educ. v. Barnette, 319 U. S. 624 [flag salute]).
On the other hand, particular conditions change the basis for. probable cause and therefore the standard of reasonableness of searches and seizures under constitutional limitations. A school is a special kind of place in which serious and dangerous wrongdoing is intolerable. Youngsters in a school, for their own sake, as well as that of their age peers in the school, may not be treated *487 with the same circumspection required outside the school or to which self-sufficient adults áre entitled. The fact of an epidemic danger in the school may not be. ignored in theory or in reality. The dangerous drug prevalence in many schools and in many areas is a significant fact to be considered in determining the scope of reasonableness in making searches (cf. Education Law, §§ 912-a, 3028-a*).
That the primary purpose of school searches may be to protect the school environment, and not to secure a criminal con? viction supports the analysis just made but does not permit random causeless searches. Thus, the ban against unreasonable searches and seizures is applicable in situations involving “ administrative ” action as well as criminal proceedings (Camara v. Municipal Ct., 387 U. S. 523, 530-535; Matter of Finn’s Liq. Shop v. State Liq. Auth., 24 N Y 2d 647, 655, cert, den. 396 U. S. 840). It is anomalous to regard the freedom from unreasonable searches as protected only when a person is subjected to criminal sanctions or procedure (Camara v. Municipal Ct., 387 U. S. 523, 530, supra). Moreover, as in this case, searches for noncriminal purposes often lead to evidence forming the basis for a criminal prosecution.
People v. Overton (24 N Y 2d 522, supra) is not to the contrary. The Overton decision upheld a search of a high school student’s locker predicated upon the consent of the school’s principal. The facts there indicated that the student had no reasonable expectation of privacy in a locker over which the school authorities had retained extensive control. This reasoning has no application and is unpersuasive with respect to a student’s person.
*488 Children, may not be equated with adults for all constitutional purposes (compare People v. Kahan, 15 N Y 2d 311, 312 [Fuld, J., concurring]; Ginsberg v. New York, 390 U. S. 629, 638-640; Prince v. Massachusetts, 321 U. S. 158, 168-170 with In re Gault, 387 U. S. 1, 31-56). Their natural limitations, varying with age, and the obligation of those, in whose charge they are, to protect, guide, and if need be, discipline them, are recognized in every kind of society. At the same time, in a civilized society it is also recognized that the Obligations and powers of those charged with the care of children should be limited by standards shaped by the conditions which require them. Thus, the imposition of authority over children may not exceed the causes which give rise to that authority. Moreover, the spill-over from permissible substitute parental authority into the drastic action more restrictedly allowed the State is present. Indeed, this very case illustrates how a school search done in the name and purpose of school security may result in a criminal prosecution. When the drastic consequences flowing from State action occur, then the behavior of agents of the State may be circumscribed by similar limitations which circumscribe them in an adult frame of reference. Of course the conditions of security in a school may not be ignored and will modify the rules for the application of the standard of reasonableness for a school search.
The ultimate issue is one often faced in the law: the balancing of basic personal rights against urgent social necessities, a balancing always fraught with difficulty, strain, and niceness of distinctions. Given the special responsibility of school teachers in the control of the school precincts and the grave threat, even lethal threat, of drug abuse among school children, the basis for finding sufficient cause for a school search will be less than that required outside the school precincts (cf. Terry v. Ohio, 392 U. S. 1, 20-27; Camara v. Municipal Ct., 387 U. S. 523, 535-539, supra). And, if there is not sufficient cause, the exclusionary rule must be applied in a criminal prosecution to evidence obtained illegally.
Such courts as have had occasion to pass upon the degree of cause required to justify a school search have all agreed that constitutional limitations are involved, except for those eases which have held that school teachers are private persons not subject to constitutional limitations or to the exclusionary rule. They *489 have also all agreed that the circumstances of a school search, including the special responsibilities of the teachers in charge ^ of students, permit a wider latitude for finding cause for search than would be applied to an adult or to any person outside the school precincts. (See cases collected in Ann., Searches by School Officials — Validity, 49 ALR 3d 978.)
Among the factors to be considered in determining the sufficiency of cause to search a student are the child’s age, history and record in the school, the prevalence and seriousness of the problem in the school to which the search was directed, and, of course, the exigency to make the search without delay.
Quite material would be the observation of the student to be searched, over a sufficient period, whether hours, days or longer, which suggests, at least, more than an equivocal suspicion, that he is engaged in dangerous activities. The two brief excursions into the toilet room in this case were equivocal and could be more likely explained by all sorts of innocent activities, especially where youngesters are involved (compare People v. Jackson, 65 Misc 2d 909, affd. 30 N Y 2d 734 with People v. Corrado, 22 N Y 2d 308, 312-313). The “ confidential information ” supplied no better basis for a search, alone or in combination with the brief observations on the morning of the search (compare People v. Horowitz, 21 N Y 2d 55, 58; People v. Corrado, 22 N Y 2d 308, 312, 313, supra, with People v. Valentine, 17 N Y 2d 128, 132; People v. White, 16 N Y 2d 270, 273, cert. den. 386 U. S. 1008). The basis of the source’s conclusion or reliability are not disclosed, and the content of the information is merely described as “ possible dealing with drugs ”. It justified the surveillance of defendant, of course, but, on the other hand, yielded evidently no more than the observation of the two visits to the toilet room and a lunch with a suspect fellow student.
Indicative of the slender basis upon which the search was sustained by the suppression court is the ambivalent finding: “ Suspicion may become by the conduct of the defendant probable cause, but the circumstances in this case were such as to invite an inquiring mind to stipulate on the unusual conduct of the defendant. The [teachers’] interest in what the defendant may have been doing was a manifestation of performing their duties as [teachers]. Any information received by them was sufficient to give rise to probable cause.” Analytically, the *490 process was that of compounding one suspicion upon another, unless indeed the “ unusual conduct ” gave rise to a valid inference of misconduct. This, it is suggested, was not the case.
Much more useful, although not essential and perhaps not enough to support a search outside the school precincts, would have been observations of defendant making contact with outside suspect sources. The added observation of defendant having lunch with another student “ also suspected ” of dealing with drugs is all but meaningless, because contact among students in the school would be so likely and so susceptible of innocent explanation (cf. Spinelli v. United States, 393 U. S. 410, 418; Sibron v. New York, 392 U. S. 40, 62). Quite different would have been accumulated instances of concentrated association with students suspected or known to be involved in drug use or distribution.
If there were sufficient basis for a school search, and the' glassine envelopes were found in defendant’s wallet, the further indignity of a strip search was warranted, to make sure that defendant did not possess a still larger supply of drugs and to establish the role he played in carrying the drugs. That the search was conducted in the presence of witnesses, although adding to the indignity, was likewise warranted both to provide corroboration of the findings and to prevent or counteract false claims of the contraband having been planted on the person searched.
The issue may not be left without emphasizing that although the necessities for a public school search may be greater than for one outside the school, the psychological damage that would be risked on sensitive children by random search insufficiently, justified by the necessities is not tolerable. And it must also be emphasized that the scope of permissible search and, for that matter, the scope of undue risk of psychological harm, will vary significantly with the age and mental development of the child.
Finally, the conduct of the school teachers was, of course, commendable in their assiduousness to uproot a grave problem in their school. They were proven ‘ ‘ right ’ ’ by what they found on the defendant following the search. More is required, however, if arbitrary power is to be avoided, and. that is to require basis for the search at léast to the minimal degree suggested *491 above. The school teachers may not have been sufficiently aware of the required basis, but the prosecutors in criminal proceedings must be charged with that responsibility if appropriate standards are to be applied effectively.
Accordingly, the order of the Appellate Term should be reversed, the adjudication vacáted, and the complaint dismissed.
Judges Jasen, Gabrielli, Jones, Wachtler, Rabin and Stevens concur.
Order reversed, etc.

 The statute is interesting both as an indication of the problem and as a recognition of the possible limitation on the broad scope of a teacher’s responsibility. It reads: “Any teacher, school administrator, school guidance counselor, school psychologist, school drug counselor, school nurse, supervisor of attendance, attendance teacher or attendance officer having reasonable cause to suspect that a secondary or elementary student under twenty-one years of age is addicted to a narcotic drug or under the influence of a dangerous drug, who reports such information to the appropriate secondary or elementary school officials pursuant to the school’s drug policy or if the school has no drug policy to the school’s principal or the parents of such student under twenty-one years of age shall have immunity from any civil liability that might otherwise be incurred or imposed as a result of the making of such a report.”