■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES CAMERON, Also Known as THOMAS SCOTT, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD JAMES McCOY, Appellant.— Judgments, Supreme Court, New York County, rendered April 24, 1974 (after denial of motions to suppress and to reopen the motions per Lang, J., on February 15, 1973 and February 20, 1974, respectively), convicting each defendant, upon a plea of guilty, of the crime of criminal possession of a dangerous drug in the second degree, unanimously reversed, on the law, the motions to suppress granted, and the indictment dismissed. On October 27, 1971, three policemen were on the night shift (6:00 P.M. to 2:00 A.M.) of an anticrime patrol in an unmarked car and observed three late-model Cadillacs double-parked in front of an apartment house in upper Manhattan. At about 2:00 A.M. they observed three black men, one of whom was the defendant McCoy, leave the building and drive away in the Cadillacs. On October 28, before going on duty for the next evening, the officers were given a "condition slip." This slip was a piece of paper outlining a particular problem in the sector to be patrolled. A patrol team getting such a slip would be required to investigate the condition alleged and to submit a report. The slip handed to the patrolmen stated in pertinent part: "179 Bennett Avenue, Apartment 4D, sex & drugs." The information was based on a tip given by an anonymous informant. The patrolmen who were on the 6:00 P.M. TO 2:00 A.M. tour of duty (October 28–October 29) observed the area in question on various occasions that evening. At about 12:30 A.M. on October 29, they noticed two of the same three Cadillacs as on the previous night double-parked in the same location. Subsequently, at approximately 1:00 A.M., the third Cadillac pulled up and double-parked in front of the other two. At about 1:30 A.M., defendants McCoy and Cameron left the apartment house. McCoy was carrying a black satchel and handed it to Cameron. McCoy then entered the frontmost Cadillac and drove away with Cameron at his side. The officers observing this scene pursued the defendants in their unmarked car and directed a radio patrol car to stop the Cadillac. Ownership of the black satchel was disclaimed, and one officer addressing both defendants then asked, "If it does not belong to you [indicating Cameron], and if it does not belong to you [indicating McCoy], you don't mind if I have a look in it, do you?" Cameron shrugged and McCoy said, "Go ahead." A quantity of heroin was found in the satchel. There was no showing of any nexus between defendants and Apartment 4D. There was no inherently illegal activity engaged in by either defendant which was observed by the police. Under these circumstances, there was insufficient cause shown to stop the vehicle (cf. *People v Ingle,* 36 NY2d 413; *People v Arthurs,* 24 NY2d 688). The alleged "consensual" search of the satchel was not voluntary but constituted acquiescence to governmental authority (cf. *Bumper v North Carolina,* 391 US 543; *People v Whitehurst,* 25 NY2d 389), and therefore cannot cure the impropriety of the stopping of the car. Under the circumstances, the motion to suppress should have been granted. In view of the absence of legal basis for the seizure of the contraband, possession of which is the sole crime alleged in the indictment, the indictment must be dismissed. Concur—Kupferman, J. P., Murphy, Tilzer, Capozzoli and Lane, JJ.