Frank Com:posto, J.
Defendants move for an order suppressing the use of certain physical evidence and oral statements, allegedly obtained in violation of their constitutional rights.
Defendants contend that the initial stop by police was unlawful; the arrest was illegal; there was no probable cause for such arrest and that all subsequent events were unlawful.
The People assert that under the general investigatory powers of the police, this search and seizure was lawful.
After a hearing on the motion at which three police officers testified for the People and defendant Carmen Hassele testified on behalf of the defendants, the following pertinent facts were found:
On December 5, 1974, Detective Stanley Ackerman, attached to the seventh precinct investigative unit in Manhattan, received an anonymous telephone call from an unknown person in Brooklyn. The informer related that two men armed with guns and in a yellow Volkswagen, license no. 205 YBY, were going to hold up a store on Clinton Street. The detective checked the various premises on Clinton Street in Manhattan and found no likelihood of a holdup of any premises on that street. Realizing that there was a Clinton Street in Brooklyn, he transmitted the information to the Brooklyn police robbery squad and took no further action.
A bulletin was issued to all commands in Brooklyn, which read "watch for yellow VW, registration #205 YBY with 2 males and 1 female, armed”.
Police Officers Dascoli and Ruiz were on radio motor patrol *286 duty on December 7, 1974. At about 12:15 a.m., at Blake Avenue and Hinsdale Street, they observed a yellow Volkswagen southbound on Hinsdale Street. Recalling the bulletin read to them before going on duty relating to the yellow Volkswagen, they followed the car. The car stopped on Hinsdale Street between Blake and Dumont Avenues and discharged a male Puerto Rican. When the officers reached close enough to the Volkswagen and saw that the license number corresponded to that in the bulletin issued, they signaled the driver to pull over — which was done — and radioed for assistance. Officer Dascoli left his patrol car, approached the driver’s side of the Volkswagen and asked the driver to produce his driver’s license and the registration. The defendant driver Charles Hassele came out of the car and produced his driver’s license and registration. Officer Ruiz stood behind the Volkswagen. Officer Dascoli and the defendant walked to the curb and were in conversation when an officer from the back-up team arrived on the scene. Officer Mariello noticed that the defendant had his hands in his pockets and ordered him to take them out. As defendant was removing his hands from his pocket, a small packet of tinfoil fell or was thrown to the ground. Officer Mariello reached down, retrieved the tinfoil packet and opened it up, discovering that it contained a white powder. He then arrested the defendant for possession of drugs. He told the woman passenger, Carmen Hassele, to open her pocketbook to see if she had a gun. She complied with the request and while defendant Carmen Hassele held the bag he looked in and saw a gravity knife. She was then placed under arrest for possession of the knife.
Defendants and their auto were removed to the station house. At the precinct the police made an inventory search of the car, as required by police regulations. While so doing, the police discovered a quantity of weapons under the rear seat.
Defendant Carmen Hassele testified that she was the owner of the vehicle and that the driver was her husband. She further asserted that the auto was green and not yellow, and in substantiation of this statement she produced a car loan agreement she executed at the time of the purchase of this new Volkswagen and the details recorded therein is color— "green”. Furthermore, the District Attorney conceded that on the registration which the officers took from the defendant and which was never returned to her or produced in court, the color was recorded as "green”.
*287 The court reaches the following conclusions of law based on the facts found.
The defendants were seized within the meaning of the Fourth Amendment at the time of the stop. In People v Cantor (36 NY2d 106, 111-112), the court stated: "Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, the individual has been seized within the meaning of the Fourth Amendment (Terry v Ohio, supra). This is true whether a person submits to the authority of the badge or whether he succumbs to force. Here the defendant was deprived of his freedom of movement when he was encircled by three police officers as he stood alongside his car which was blocked by the police vehicle. At that moment he could not have proceeded on his way, therefore he was seized. (See e.g. United States v Nicholas, 448 F2d 622; United States v Strickler, 490 F2d 378.)”
Whenever a street encounter amounts to a seizure it must pass constitutional muster. As was said in People v Cantor (supra, at pp 112-113): "Before a person may be stopped in a public place a police officer must have reasonable suspicion that such person is committing, has committed or is about to commit a crime (CPL 140.50). Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinary prudent and cautious man under the circumstances to believe criminal activity is at hand. * * * To justify such an intrusion, the police officer must indicate specific and articulable facts, which, along with any logical deductions, reasonably prompted that intrusion. Vague or unparticularized hunches will not suffice (Terry v Ohio, 392 US 1, supra; Wong Sun v United States, 371 US 471, 479). Nor will good faith on the part of the police be enough to validate an illegal interference with an individual (e. g. Terry v Ohio, supra; Henry v United States, 361 US 98, supra; Hill v California, 401 US 797; Smith v County of Nassau, 34 NY2d 18).”
The testimony is barren of any objective evidence evincing criminal activity. The officers did not observe the defendants participate in any criminal acts. The vehicle was being operated in a lawful manner and the driver had not violated any traffic law regulations. The police lacked independent knowledge or information from a reliable informer, to indicate that a crime had been committed (People v Hunter, 30 NY2d 774). Nor was the defendants’ behavior furtive or evasive (People v *288 White, 16 NY2d 270); or dangerous to the safety of the police or others (Warden v Hayden, 387 US 294).
The events preceding the stop cannot be considered as giving probable cause, to justify the police in the seizure and search herein.
The court, in People v Mangano (NYLJ, July 17, 1975, pp 14, 15, cols 8, 1), stated: "Information received through an anonymous tip, is not sufficient in itself to establish probable cause to arrest, absent a showing that the informant was reliable or that the police had other independent information which in itself was sufficient to constitute the requisite cause required to arrest (People v Horowitz, 21 NY2d 55, 60; People v Scott D., 34 NY2d 483, 489; People v Corrado, 22 NY2d 308, 312-313)”.
The Court of Appeals as recently as February 20, 1975 addressed itself to this problem.
In People v Lypka (36 NY2d 210, 213-214), the court stated:
"Preliminarily, we think that the police response to the telephone and teletype communications from the Pennsylvania authorities [in the case at bar, the communication from the Manhattan police unit to the Brooklyn police unit] was reasonable and proper. A police officer is entitled to act on the strength of a radio bulletin or a telephone or teletype alert from a fellow officer or department and to assume its reliability. (Whitely v Warden, 401 US 560, 568; People v Horowitz, 21 NY2d 55, 60.) It follows that where the bulletin or alert, prima facie, furnishes probable cause, a reasonable search is permissible. In such circumstances the sender’s knowledge is imputed to the receiver and, when the receiver acts, he presumptively possesses the requisite probable cause to search.
"The presumption is not irrational and may be rebutted. To be sure, of itself the bulletin is unsubstantiated hearsay. (Cf. United States v Pond, 382 F Supp 556, 561.) But as a practical matter, and in this area we deal with practicalities (United States v Ventresca, 380 US 102, 108), it is far more reliable than the usual sort of hearsay upon which warrants may issue. (See Jones v United States, 362 US 257, 269; see Search Warrant — Hearsay, Ann., 10 ALR3d 359.) Indeed, the probabilities are that such detailed information of the type in these communications does not find its way onto the police air *289 waves without substantial basis. (See, e. g. United States v Nygard, 324 F Supp 863, 866-867.)
"But where on a motion to suppress, a challenge to the receiver’s action is made, the presumption of probable cause that originally cloaked that action disappears from the case. (Cf. Whitely v Warden, 401 US 560, supra.) At that point, bare reliance on an unsubstantiated hearsay communication from the instigating officer or department will not suffice for probable cause. Ultimately, to sustain their burden at the suppression hearing (see People v Green, 33 NY2d 496, 500, n 3), the People must demonstrate that the sender or sending agency itself possessed the requisite probable cause to act. (See United States v Morris, 445 F2d 1233, cert den 404 US 957, supra; Brown v State, 443 SW2d 261, 263 [Tex Ct Crim App]; United States v Nygard, supra; United States v Pond, 382 F Supp 556; Note, 25 Baylor L Rev 697.)”
Here, there was no proof submitted that the Manhattan unit possessed the necessary probable cause and it was admitted that the anonymous caller was unknown to them and therefore could not qualify as a "reliable informant.” Further, there were no independent observations made at the scene by the Brooklyn unit that would or did confirm in important respects the information transmitted by the Manhattan unit (People v Horowitz, 21 NY2d 55).
The court concludes that the defendants were stopped without probable cause and were therefore illegally seized.
The alleged search of defendant Carmen Hassele’s pocketbook was not a consensual search but was an acquiescence to governmental authorities and "cannot cure the impropriety of the stopping of the car.” (People v Cameron, 48 AD2d 783.)
The seizure of defendant Charles Hassele having been found to be illegal the tinfoil packet to have contained drugs was illegally seized (see People v Buffolino, 48 AD2d 904).
The court reaches this determination reluctantly as it was apparent that the contraband was of the type used in professional studied crimes. The police are to be commended for their diligence and alertness. Even though the court is constrained to grant the motion to suppress, it is comforting to know that because of police diligence some guns and other illegal contraband have been removed from circulation.
Motion to suppress granted.