82 N.Y.2d 588 (1993)
627 N.E.2d 500
606 N.Y.S.2d 579
In the Matter of Gregory M., a Person Alleged to be a Juvenile Delinquent, Appellant.
Court of Appeals of the State of New York.
Argued October 5, 1993.
Decided December 20, 1993.
Marcia Egger, New York City, and Lenore Gittis for appellant.
O. Peter Sherwood, Corporation Counsel of New York City (Linda H. Young and Pamela Seider Dolgow of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, HANCOCK, JR., BELLACOSA and SMITH concur with Judge LEVINE; Judge TITONE dissents in a separate opinion.
*590 LEVINE, J.
There is no dispute over the facts giving rise to appellant's adjudication of juvenile delinquency upon his admission to an act that, if committed by an adult, would constitute criminal possession of a weapon in the fourth degree. On November 29, 1990 appellant, then 15 years old, arrived at the high school he attended in The Bronx without a proper student identification card. He was directed by a school security officer to report to the office of the Dean to obtain a new card. In accordance with the school policy, he was required to leave his cloth book bag with the security officer until he had obtained the proper identification. When appellant tossed the book bag on a metal shelf before proceeding beyond the school lobby to the Dean's office, the security officer heard a metallic "thud" which he characterized as "unusual". He ran his fingers over the outer surface of the bottom of the bag and felt the outline of a gun. The security officer then summoned the Dean who also discerned the shape of a gun upon feeling the outside of appellant's book bag. The bag was brought to the Dean's office and opened by the head of school security, revealing a small hand gun later identified as a .38 Titan Tiger Special.
A juvenile delinquency petition was filed in Family Court accusing appellant of acts constituting criminal possession of a weapon in the second, third and fourth degrees, defacement of a weapon and unlawful possession of a weapon by a person under age 16. Family Court denied appellant's motion to *591 suppress the gun. Following a fact-finding hearing, Family Court dismissed the count of the petition accusing appellant of an act that, if committed by an adult, would constitute the crime of criminal possession of a weapon in the second degree, and found that he had committed all the acts alleged in the remaining counts of the petition. At the dispositional hearing, Family Court placed appellant with the Division for Youth.
On appeal, the Appellate Division upheld Family Court's denial of appellant's motion to suppress (184 AD2d 252). It held that the unusual metal thud heard by the security officer when appellant deposited his book bag was sufficient to support a reasonable suspicion that the bag contained a weapon, thereby justifying a "frisk" of the outside of the bag. The Court further ruled that when the frisk touching revealed the presence in the bag of an object that felt like a gun, the school authorities were justified in searching the inside of the bag. The Court, however, reversed the adjudication of juvenile delinquency and remanded for a new fact-finding hearing because of an error in the introduction into evidence of a ballistics report regarding the gun found in appellant's satchel. Upon remand to Family Court, the proceeding against appellant was disposed of by his admission to an act that, if committed by an adult, would constitute the crime of criminal possession of a weapon in the fourth degree. This Court granted permission to appeal in order to review the propriety of the Appellate Division's ruling upholding Family Court's denial of appellant's motion to suppress.
We affirm. Although minimally intrusive, the purposeful investigative touching of the outside of appellant's book bag by the school security officer (i.e., to acquire knowledge about the bag's contents) falls marginally within a search for constitutional purposes (see, Arizona v Hicks, 480 US 321, 325; see also, United States v Most, 876 F.2d 191, 193-194). Also, appellant is quite correct in contending that the metallic thud heard by the security officer when appellant put the book bag down was by itself insufficient to furnish a reasonable suspicion that the bag contained a weapon. We conclude, however, that a less rigorous premonition concerning the contents of the bag was sufficient to justify the investigative touching of the outside of the bag. When that touching disclosed the presence of a gun-like object in the bag, there was reasonable suspicion to justify the search of the inside of the bag.
In People v Scott D. (34 N.Y.2d 483), this Court held that *592 students attending public schools are protected by the constitutional ban against unreasonable searches and seizures. Scott D. involved a school search of a student for illegal drugs. We further held in Scott D. that inherent in determining whether a school search was reasonable is a "balancing of basic personal rights against urgent social necessities" (id., at 488) and that, "[g]iven the special responsibility of school teachers in the control of the school precincts and the grave threat, even lethal threat, of drug abuse among school children, the basis for finding sufficient cause for a school search will be less than that required outside the school precincts" (id., at 488 [emphasis supplied]).
Employing an analysis similar to that of People v Scott D. (supra), the United States Supreme Court in New Jersey v T. L. O. (469 US 325) also concluded that the Fourth Amendment of the United States Constitution applies to searches of students by school authorities, but held that less cause is required to justify such a search than is required of law enforcement authorities searching persons or their effects outside school premises. Thus, the Supreme Court held that a determination of the appropriate standard of reasonableness to govern a certain class of searches requires a balancing: "On one side of the balance are arrayed the individual's legitimate expectations of privacy and personal security; on the other, the government's need for effective methods to deal with breaches of public order" (id., at 337). The Court in New Jersey v T. L. O. held that, ordinarily, searches by school authorities of the persons or belongings of students may be made upon "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school" (id., at 342). The Court applied the reasonable suspicion standard in validating a teacher's full search of the inside of a student's purse for cigarettes, during which evidence of her involvement in drug dealing was revealed.
We agree that for searches by school authorities of the persons and belongings of students, such as that conducted in New Jersey v T. L. O. (supra), the reasonable suspicion standard adopted in that case for Fourth Amendment purposes is also appropriate under our State Constitution (NY Const, art I, § 12). In the instant case, however, the investigative touching of the outer surface of appellant's book bag falls within a class of searches far less intrusive than those which, under New Jersey v T. L. O., require application of the reasonable *593 suspicion standard. Applying the balancing process required under People v Scott D. (supra) and New Jersey v T. L. O. (supra), it is undeniable that appellant had only a minimal expectation of privacy regarding the outer touching of his school bag by school security personnel, even for purposes of learning something regarding its contents, when he left the bag with the security officer pursuant to the school policy requiring this until he obtained a valid identification card. On the other hand, it seems equally undeniable that, in the balancing process, prevention of the introduction of hand guns and other lethal weapons into New York City schools such as this high school is a governmental interest of the highest urgency. The extreme exigency of barring the introduction of weapons into the schools by students is no longer a matter of debate.
Thus, the balancing process ordained by People v Scott D. (supra) and New Jersey v T. L. O. (supra) leads to the conclusion that a less strict justification applies to the limited search here than the reasonable suspicion standard applicable for more intrusive school searches. In this regard, we find it noteworthy that the Supreme Court in New Jersey v T. L. O. (supra) specifically disclaimed that its decision made some quantum of individualized suspicion an essential element of every school search (see, id., at 342, n 8). The Supreme Court has elsewhere made it clear that, at least outside the context of criminal investigations by law enforcement officers, individualized suspicion is not a constitutional floor below which any search must be deemed unreasonable. There may be circumstances in which, because the privacy interests involved in the case are minimal and are overborne by the governmental interests in jeopardy if a higher standard were enforced, a search may be reasonable despite the absence of such suspicion (see, Skinner v Railway Labor Executives' Assn., 489 US 602, 624; see also, United States v Martinez-Fuerte, 428 US 543, 561-562). We need not apply these precedents, however, to sustain the actions of the school authorities in the instant case.
Because appellant's diminished expectation of privacy was so clearly outweighed by the governmental interest in interdicting the infusion of weapons in the schools, we think the "unusual" metallic thud heard when the book bag was flung down  quite evidently suggesting to the school security officer the possibility that it might contain a weapon  was sufficient justification for the investigative touching of the *594 outside of the bag, thus rendering that limited intrusion reasonable (and not based on mere whim or caprice) for constitutional purposes (cf., People v Hollman, 79 N.Y.2d 181, 190-191). Our application in the instant case of a graduated standard of reasonableness is, of course, sanctioned by and premised on the minimal nature of the search, and that it was conducted by school officials for the special needs of school security and not for a criminal investigative purpose (see, O'Connor v Ortega, 480 US 709, 725-726; see also, Preiser, 1987 Survey of New York Law  Criminal Procedure, 39 Syracuse L Rev 237, 249-251 [1988]). Once the touching of the outer surface of the bag revealed the presence of a gun-like object inside, school authorities had a reasonable suspicion of a violation of law justifying the search of the contents of the bag (New Jersey v T. L. O., supra).
We are unpersuaded by our dissenting colleague's contention that the limited intrusion upon appellant's privacy interest in his book bag, by the initial touching of the outside of the bottom of the bag to ascertain whether it may have contained a weapon, could only be justified on the school security officer's reasonable suspicion that such was so. In effect, despite vague professions to the contrary, the dissent is contending that reasonable suspicion is a constitutional floor for purposes of all types of searches, however limited, in a school setting or elsewhere, and irrespective of who conducts the search. As we have already noted, New Jersey v T. L. O. (supra) cannot be read to support that position, and it has been rejected by the Supreme Court in other cases outside the context of police searches during criminal investigations (see, e.g., Camara v Municipal Ct., 387 US 523, 538-539). The dissent instead supports this position by reliance on Terry v Ohio (392 US 1) and this Court's decisions in People v Diaz (81 N.Y.2d 106; cf., Minnesota v Dickerson, 508 US ___, 113 S Ct 2130) and Matter of Marrhonda G. (81 N.Y.2d 942). The dissent claims that applying a lesser standard than reasonable suspicion to justify the touching of the outside of appellant's bag "blurs the all-important distinction between searches and such lesser forms of intrusion as limited Terry patdowns" (dissenting opn, at 597 [emphasis supplied]). The Supreme Court in Terry described the intrusion in that case as "a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons" (Terry v Ohio, supra, at 16), and characterized it as "a serious intrusion upon the sanctity of the person, which may inflict great indignity" *595 (id., at 17). The primary sense in which, in Terry, the "frisk" of the person was characterized and then justified as a "limited search", and thus less than a full search, was that "it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby" (id., at 26).
This concept of limited search in Terry is precisely what was applied in People v Diaz (81 N.Y.2d 106, supra). "Under both the State and Federal Constitutions, the protective pat-down exception to the warrant requirement authorizes a limited search * * * to determine whether a weapon is present" (id., at 109 [emphasis supplied]). Diaz declined to extend the Terry warrantless search exception to a frisk disclosing other forms of contraband. "Once an officer has concluded that no weapon is present, the search is over and there is no authority for further intrusion" (id., at 109). Diaz and Terry simply do not apply to a less intrusive touching of the outside of a book bag by school personnel, after possession of the bag had been lawfully relinquished.
Likewise, the holding in Matter of Marrhonda G. (81 N.Y.2d 942, supra) is no bar to the touching of the outer surface of appellant's book bag on less than reasonable suspicion that it contained a weapon. Marrhonda G. refused to create a "plain touch" justification for the warrantless searching of the contents of a travel bag. Had the holding in Marrhonda G. been intended to bar the touching of the outer surface of the travel bag in that case, the Court clearly would not have suggested that "the police [could] have simply detained the bag while they obtained a warrant to search it" (id., at 945), since the information necessary to obtain a search warrant could only have been gained from touching the bag.
The dissent's attempt to rigidify reasonable suspicion as the constitutionally mandated minimum standard for nonpolice searches, irrespective of minimal levels of intrusiveness, is also inconsistent with the flexible balancing of expectations of privacy/State interests approach dictated by New Jersey v T. L. O. (supra) and People v Scott D. (supra). Thus, Family Court's denial of appellant's motion to suppress should be upheld.
Accordingly, the judgment of Family Court appealed from and the order of the Appellate Division brought up for review should be affirmed, without costs.
TITONE, J. (dissenting).
Acknowledging that there was not *596 even a "reasonable suspicion" of criminality, the Court nevertheless holds that the school security guard was entitled to conduct a search of appellant's book bag. In so ruling, the Court has reduced the privacy protections of the Fourth Amendment and of article I, § 12 of the State Constitution below all previously recognized minimum thresholds. While I too am horrified by the recent escalation of deadly weapons in the public schools, I cannot agree that the problem should be remedied by a contraction of even the minimal privacy rights that the Supreme Court has accorded to school children, particularly when there exist other, less intrusive remedies. Since I can find no constitutionally sanctioned justification for this invasion of an individual student's right to the privacy of his personal effects, I dissent from the Court's decision to uphold the search in this case.
It is undisputed that the security guard's actions in this case in feeling the outside of appellant's school bag constituted a full-blown search for purposes of constitutional analysis. Indeed, after our holdings in People v Diaz (81 N.Y.2d 106) and Matter of Marrhonda G. (81 N.Y.2d 942), which were premised on the Federal and State Constitutions (People v Diaz, supra, at 112-113, n 2), that characterization is no longer open to question in this State (but see, People v Lewis, 82 N.Y.2d 839 [characterizing a feel of a shirt that was not on the suspect's person as a "handling"]; cf., Minnesota v Dickerson, 508 US ___, 113 S Ct 2130).
Further, although the point is not explicitly recognized by the majority, there can be little doubt that, but for its occurrence in a school setting, this warrantless search, like any other, would have to be supported by both a showing of probable cause and a recognized exception to the warrant requirement (e.g., People v Diaz, supra; Matter of Marrhonda G., supra). The teaching of New Jersey v T. L. O. (469 US 325), on which the majority places heavy reliance, is that search warrants are not constitutionally required for school searches and that such searches may be justified by a lesser showing of reasonable suspicion (see also, People v Scott D., 34 N.Y.2d 483). Nothing in T. L. O., however, suggests that the serious intrusion of a search may be upheld on even less than reasonable suspicion, much less on the gossamer thread of what the Court has labelled an "unusual" metallic thud. The majority's attempt to justify its decision to do so here is singularly unpersuasive.
*597 The majority begins its analysis with the premise that the "investigative touching" of the outside of appellant's book bag was somehow "far less intrusive" than other types of searches. This premise, however, is irreconcilable with the holding and analysis in People v Diaz (supra). In Diaz, this Court specifically stated that such an "investigative touching" of a closed container requires "a degree of pinching, squeezing or probing beyond the limited intrusion allowed under Terry [v Ohio (392 US 1)]" (81 NY2d, at 112, supra; see also, Matter of Marrhonda G., supra).[1]
Further, the majority's analysis is objectionable because it blurs the all-important distinction between searches and such lesser forms of intrusion as limited Terry patdowns (see, Terry v Ohio, supra)  a result that the Diaz Court expressly refused to sanction (81 NY2d, at 112). In the past, the courts have been willing to permit incursions not intrusive enough to be deemed full searches or seizures upon a showing of reasonable suspicion rather than probable cause (see, Delaware v Prouse, 440 US 648; Pennsylvania v Mimms, 434 US 106; United States v Brignoni-Ponce, 422 US 873; Terry v Ohio, supra; People v Hollman, 79 N.Y.2d 181; People v De Bour, 40 N.Y.2d 210). However, once it has been determined that a particular police action rose to the level of a "search" or a "seizure," neither the Supreme Court nor this Court has been willing to subdivide that characterization into subcategories related to the degree of the intrusiveness or to use such a subdivision as a basis for reducing the required probable cause showing (see, Dunaway v New York, 442 US 200; People v Diaz, supra; Matter of Marrhonda G., supra; cf., Camara v Municipal Ct., 387 US 523).[2] Indeed, the majority's reference here to an *598 "investigative touching" is reminiscent of the "investigative detention" doctrine that was rejected in Dunaway v New York (supra).[3]
What the majority has done here, in effect, is to dilute the recently minted Diaz-Marrhonda holding. According to this majority, the touching of a closed container for the purpose of discovering possible criminality is a "search" in some technical sense but is not the type of search that would require probable cause in the nonschool setting  or reasonable suspicion in the school setting as permitted by T. L. O. Rather, it is some hybrid form of police action that is labelled a "search" but may be treated as some lesser form of intrusion for purposes of determining the required constitutional knowledge predicate.
Notably, this dilution of the Diaz-Marrhonda holding cannot be justified on the ground that the search in this case occurred in a school setting (see, majority opn, at 594). While that circumstance may distinguish this case from Diaz with regard to whether probable cause or reasonable suspicion is the proper standard, it does not affect the degree of intrusiveness of the authorities' conduct. Manifestly, if a particular action is intrusive enough to be considered an unqualified search when it occurs on the street or in a store security office (People v Diaz, supra; Matter of Marrhonda G., supra), the same action must also be deemed an equally intrusive unqualified search when conducted in a school. And, the previously recognized standard applicable to such an action  probable cause in a street encounter or reasonable suspicion in a school encounter  should be used to measure the constitutional propriety of the intrusion.
The majority also attempts to justify its decision on the theory that appellant had only a "minimal" expectation of privacy "regarding the outer touching of his school bag" when he left it with a security officer pursuant to a school policy (majority opn, at 593). This sweeping conclusion, however, remains unexplained. Significantly, the Supreme Court has specifically rejected the contention that a child has a drastically *599 diminished expectation of privacy in articles of personal property that are carried into school. In T. L. O. (supra, at 338), the very case on which the majority relies, the Court stated that neither the "maintenance of a sound educational environment" nor the "minimal interest of the child in bringing any items of personal property into the school" is sufficient to justify that conclusion. As the Court noted, "school-children may find it necessary to carry with them a variety of legitimate, noncontraband items, and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds" (id., at 339). Similarly, neither a waiver of the right to privacy nor a diminution in the expectation of privacy may be inferred from the fact that a student, acting in accordance with the rules of the school, has temporarily relinquished the closed container he used to carry his personal effects in order to obtain an entrance pass.
The appropriate balance between "the schoolchild's legitimate expectations of privacy and the school's equally legitimate need to maintain an environment in which learning can take place" (id., at 340) was carefully and deliberately struck in T. L. O. by permitting searches conducted without warrants and on reasonable suspicion rather than probable cause (id., at 339-343). That balance is skewed in a manner never contemplated by the T. L. O. Court when the notion of a reduced expectation of privacy is injected as a basis for effecting an even greater reduction in the constitutional privacy protections afforded to students.[4]
A further reason offered by the majority for reducing the quantum of information necessary to conduct a school search such as this one is the unquestionably compelling need to prevent the introduction of hand guns and other lethal weapons into the schools. I find this aspect of the majority's rationale unconvincing for several reasons. First, the reduction *600 of students' privacy rights that the majority sanctions is not narrowly tailored to address weapon-related criminal activities. While the search in this case happened to disclose a weapon, the sequence of events that led to that disclosure here could just as easily lead in another case to the discovery of some other illegality or rule infraction such as the possession of drugs (cf., People v Diaz, supra) or cigarettes. Second, there exist other, more effective means of interdicting weapons in public schools, namely, the installation of metal detectors at the front door. Thus, the need to control the burgeoning weapon crisis is, at best, a questionable rationale for such a serious incursion on students' constitutional rights.
Third, and most importantly, the constitutional privacy guarantees in our Federal and State Constitutions exist precisely to protect citizens from governmental overreaching in the name of the exigencies of law enforcement. It is circular to rely on the contemporary exigencies of law enforcement as grounds for justifying reductions in the constitutional protections. It is also somewhat dangerous, since the same rationale may be trotted out to justify virtually any governmental excess that is aimed at a currently troublesome or rampant form of crime (see, e.g., People v Keta, 79 N.Y.2d 474 [auto theft]; Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 N.Y.2d 57).
Contrary to the majority's views, it would seem that the need for judicial intervention to bolster the privacy protections would concomitantly increase, rather than diminish, with an increase in the public pressure on law enforcement authorities to take all necessary steps to obliterate a new crime threat. As has been said in an analogous context, "[o]ur responsibility in the judicial branch is not to respond to these temporary crises or to shape the law so as to advance the goals of law enforcement, but rather to stand as a fixed citadel for constitutional rights" (People v Keta, 79 N.Y.2d 474, 501).
What the majority seems to overlook is the fact that there was no way of knowing until after appellant's bag was palpated and searched that it contained a dangerous weapon rather than a video game or some other harmless device commonly carried by high school students. The privacy protections of the State and Federal Constitutions have little worth if the balancing analysis they dictate allows consideration of the nature of the items disclosed as a result of the police intrusion. Such an analysis sacrifices the rights of the innocent *601 to an extent that I find unacceptable. Indeed, a recent incident in which an entire fifth grade class was frisked after two teachers discovered that money was missing from their wallets (Albany Times Union [Associated Press], Nov. 12, 1993, at B2, col 1) highlights the double-edged nature of the balancing inquiry the Court has undertaken and demonstrates the need to accord more serious weight to the privacy side of the equation, even in the context of a school search.
Finally, even if it is assumed that some lesser showing than the reasonable suspicion approved by the Supreme Court is permissible in these circumstances, the majority has not given any indication of the nature of that showing or of what the lower limits of that showing might be. Even those who advocate a "flexible balancing of expectations" in Fourth Amendment analysis would acknowledge that "flexibility" does not sanction the elimination of any and all articulable standards.
As the majority concedes, a metallic "thud" is not in itself a suspicious occurrence, and in this case there were no other "surrounding circumstances" to elevate the level of founded suspicion that the security guard had before he undertook a search of the outside of appellant's book bag. If, as the majority admits, the "thud" was not sufficient to furnish reasonable suspicion that the bag contained a gun, it is difficult to see how that "thud" could have "evidently suggest[ed] to the school security officer the possibility that [the bag] might contain a weapon" (majority opn, at 593). The distinction between a "reasonable suspicion" and an "evident suggestion" is not at all clear to me and will probably be even less meaningful to the school authorities who have to implement this new standard. The significance of the majority's reference to a "premonition" that is "less rigorous" than reasonable suspicion is even more opaque.
The closest the majority has come to actually objectifying the standard it has used is its characterization of the "thud" the guard heard as "`unusual'" (majority opn, at 593). However, what made this sound so "unusual" is far from clear. Students' book bags routinely contain such unexceptional items as make-up cases, portable cassette players and other consumer electronic devices, all of which would likely produce a metallic "thud" when dropped on a hard surface such as a counter.
Even more importantly, the "unusual" nature of an event or circumstance does not provide a sound basis for a search of *602 an individual's personal effects. Without more, such an amorphous touchstone would permit intrusions on the most arbitrary of predicates, including a student's "unusual" manner of dress, gait or speech.
In the final analysis, there really is no constitutionally acceptable predicate here for the investigative search of the outside of appellant's book bag. The fact that the search eventually led to the discovery of a gun is certainly not a sound basis for upholding the search and, indeed, to the extent the majority relies on that circumstance, its analysis begs the question. While we all have a vital interest in preventing weapons from entering our public school classrooms, that interest could have been served in this case without seriously undermining the student's constitutional rights by either asking the student about the contents of his bag upon his return (see, Matter of Marrhonda G., supra, at 945) or by insisting that he empty it or leave it with the guard before re-entering the building. In any event, while I do not advocate anything as sweeping as an over-all constitutional floor of "reasonable suspicion" that would be applicable in all situations (see, majority opn, at 594), I cannot concur in the majority's decision to sustain this search on a showing that falls well below the minimum requirements approved by the Supreme Court for searches conducted on school premises.
Accordingly, I dissent and vote to reverse the judgment and Appellate Division order brought up for review.
Judgment of Family Court appealed from and order of the Appellate Division brought up for review affirmed, without costs.
NOTES
[1] The majority's extended discussion of Terry, Diaz and Marrhonda G. (majority opn, at 594-595) is puzzling. Diaz did not apply Terry but rather held that the Terry justification for a limited patdown is in applicable once a frisk of the suspect discloses that no weapons are concealed on his or her person (81 NY2d, at 109). While Diaz may not apply to the touching of the outside of a book bag after possession has been relinquished (majority opn, at 595), Marrhonda G., which involved precisely that situation, certainly does. The remaining variable, i.e., the school setting in which the present search took place, may serve to eliminate the need for a warrant and to reduce the level of individualized suspicion required, but it does not alter the character of the intrusion as a search.
[2] Camara v Municipal Ct. (supra), which the majority cites as an example of the Supreme Court's rejection of the reasonable suspicion requirement, is unhelpful in this context. That case merely held that a showing of something less than probable cause is permissible for an inspection of premises where the intrusion is "neither personal in nature nor aimed at the discovery of evidence of crime" (id., at 537).
[3] The majority's assertion that this search was undertaken for the "special needs of school security and not for a criminal investigative purpose" (majority opn, at 594) is insupportable in view of the fact that the school officials suspected the presence of a gun or other weapon whose possession would clearly be outlawed under the provisions of the Penal Law.
[4] It is unclear what precise legal significance the majority attaches to the T. L. O. Court's decision to leave open the question whether "individualized suspicion is an essential element of the reasonableness standard * * * adopt[ed] for searches by school authorities" (469 US, at 342, n 8; see, majority opn, at 593). The majority's own suggestion that it may not require such individualized suspicion either in a school setting or, indeed, in any other Fourth Amendment context, is extremely disturbing because it is both so sweeping and so unnecessary to the analysis herein. I fear that this obiter dictum, which is introduced as mere makeweight here, will be seized upon and cited in future cases to justify even further invasions of citizens' privacy rights.