THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v IRA L. McCULLARS, Appellant.

Third Department, January 23, 1992

APPEARANCES OF COUNSEL

*Douglas P. Rutnick (Jeanne M. Heran* of counsel), for appellant.

*Sol Greenberg, District Attorney (John E. Maney* of counsel), for respondent.

**OPINION OF THE COURT**

HARVEY, J.

In May 1989, defendant was indicted and charged with two counts of criminal possession of a forged instrument in the second degree. These charges stemmed from two separate incidents in January 1989, when an individual matching defendant's description entered the Albany branch of the Northeast Savings Bank and presented stolen checks made payable to Mark McLea in the amount of $950 drawn on the account of Terry Pollard. On both occasions the checks contained the forged signature of Pollard and both transactions were to be "split transactions" in that part of the check was to be deposited to McLea's account and the balance was to be taken back by the perpetrator as cash. In the first of these two incidents the perpetrator succeeded in obtaining money from

the bank. In the second instance, however, the culprit left the bank with the check after the teller asked for identification. Following a jury trial, defendant was convicted of the second count in the indictment and was sentenced as a predicate felon to 3½ to 7 years' imprisonment. Defendant now appeals.

Initially, defendant contends that he was actually illegally arrested at his home without a warrant in violation of his constitutional rights rather than arrested at the police station as found by County Court after a suppression hearing. Defendant argues that because he was allegedly illegally arrested, the hat and coat he wore to the police station, which were ultimately confiscated and admitted into evidence at trial, should have been suppressed. At the hearing, State Police Investigator James O'Connor testified that he and two or three other officers arrived at defendant's home at approximately 1:00 P.M. on February 27, 1989 to ask defendant to voluntarily accompany them to the police station in order to look at bank photographs allegedly depicting the suspect in the bank check-cashing scam. Defendant answered the door, stepped out onto the porch and agreed to accompany the officers. Defendant stepped back inside, retrieved his coat and hat, and came back outside. O'Connor stated that defendant was not placed in handcuffs and he voluntarily accompanied him to the police car. O'Connor also indicated that one of the other officers suggested to defendant's wife that she follow them in a separate car to the station so that she could bring defendant home after he viewed the photographs. Once at the station, defendant was shown the photographs as promised. Thereafter, the police apparently decided they had enough information to arrest defendant and they did so. In contrast to this testimony, defendant and his wife testified at the hearing that the police immediately put him under arrest at his house, put handcuffs on him and forced him to accompany them.

After evaluating all the hearing evidence, County Court concluded that defendant voluntarily accompanied the police and he was not arrested until he was at the station. We must acquiesce in this assessment. There is little question that "[t]he determination of whether [a] defendant was arrested and in custody or whether he voluntarily accompanied the police is assessed under the standard of what a reasonable person, innocent of any crime, would have thought under the circumstances" (People v Tasker, 166 AD2d 753, 754, lv denied 77 NY2d 844). Such a determination, if "made by the trier of the facts, 'should not be rejected unless unsupported as a

matter of law' " *(supra,* at 754, quoting *People v Baird,* 111 AD2d 1044, 1045, *lv denied* 66 NY2d 761). Here, while it is true that at least one of the officers who accompanied defendant to the station strongly suspected that he was the culprit, it is not the subjective belief of a police officer that is the deciding factor when determining when an arrest occurs *(see, People v Crocker,* 125 AD2d 132, 134). Instead, it is the reasonable belief of the defendant that is the relevant inquiry *(supra).* In this case, there was sufficient evidence in the record to support County Court's finding that a reasonable defendant would not have believed himself to be in custody at the time defendant was transported to the station.

■ Next, defendant argues that County Court erred in denying his motion to suppress certain items seized by the police from his home on February 27, 1989 (after 3:00 P.M.) while they were executing a search warrant. The warrant in question was issued for certain personal checks that might be located at defendant's residence in Schenectady County. Nevertheless, while no checks were found, the return on the warrant listed numerous other items including a pair of glasses, a raincoat and a jacket that were subsequently admitted into evidence at trial as People's exhibits Nos. 2, 3 and 10. Defendant argues that the seizure of these undesignated items went beyond the scope of the warrant and was unauthorized. We must agree and, in doing so, reject the People's reliance on the "plain view" doctrine to justify the seizure.

In many respects the situation in this case is similar to that presented in *People v Baker* (23 NY2d 307), where police arrived at the defendant's home with a warrant to search for a certain knife. While executing the search, the police officer did not find the knife but instead seized a sweater that matched the description of a sweater the crime victim had earlier described as being worn by one of the perpetrators of the crime *(supra,* at 319). Similarly, in the case at bar, the clothing and items seized at defendant's home were apparently taken because they resembled clothing worn by the perpetrators of the subject crimes in bank photographs of the suspect the police had previously viewed. In ruling that the sweater was improperly seized in *People v Baker (supra,* at 320-321), the Court of Appeals noted that: "the authorization for the intrusion was very narrow and circumspect * * * and there were no exigent circumstances requiring an immediate response. To permit the seizure of unauthorized items in the course of a lawful search would eliminate the constitutional

requirement of 'particularity' and would open the door for general searches abhorred since colonial days". *(See, People v Basilicato,* 64 NY2d 103, 114; *People v Joseph B.,* 32 AD2d 840.)*

In our view, the admissibility of this evidence cannot be condoned by reference to the "plain view" exception to the warrant requirement. "The 'plain view' doctrine permits seizure of an item not specifically referred to in the search warrant if the officer was lawfully in a position to observe the item, observation was inadvertent rather than anticipated, and the incriminating character of the items was immediately apparent" *(People v Basilicato, supra,* at 115). Here, in light of the exhaustive search necessary to search for something as small as checks, there appears little doubt that the officers were lawfully in a position to observe the items of clothing. It cannot be said, however, that discovery was inadvertent, as opposed to anticipated, because the police had known for some time from the bank photographs what type of clothing their suspect had worn and could have included these items in the warrant request. It goes without saying that ordinary items of clothing and eyewear are not items generally considered to be obviously criminal in character. The items in the present case clearly only acquired that status due to the officers' prior knowledge of the character of these items. However, anticipated discoveries are not permissible *(see, People v Spinelli,* 35 NY2d 77, 80) and there is little question from the facts of this case that the police executing the search could also have easily gone back to the Magistrate to obtain a second warrant with little or no danger that the items would have been removed or destroyed in their absence *(see, supra,* at 81; *People v Baker, supra,* at 320).*

■ ■ Accordingly, we conclude that County Court erroneously denied defendant's motion to suppress exhibits Nos. 2, 3 and 10. We note that the bank teller who testified concerning the circumstances underlying the second count of the indictment independently identified defendant in a nonsuggestive photo array and at trial. As a result, it cannot be said that the suppression of such evidence would deprive the People of a prima facie case *(see, People v Mullins,* 137 AD2d 227, 230, 232, *lv denied* 72 NY2d 922). We cannot say, however, that this constitutional error was harmless in light of the fact that

---

* At the time of the search the house was empty, defendant was under arrest for the subject crimes and his wife was under arrest for an apparently unrelated matter.

this identification evidence was relied on at trial by the People and, more importantly, defendant was compelled at trial over defense counsel's objection to put on these items and display himself in them in front of the jury. In fact, the jury was given the bank photographs and specifically told to look at them and then look over at defendant wearing the seized clothing and then compare. Given this situation, it cannot be said that there is no reasonable possibility that the presence of the seized items did not contribute to defendant's conviction *(see, supra,* at 232). Consequently, the matter must be sent back for a new trial *(see, supra; see also, People v Crimmins,* 36 NY2d 230, 237).

The remaining allegations of error raised by defendant, including those issues contained in his *pro se* brief, have been examined and found to be without merit.

CREW III, J. (dissenting). We respectfully dissent. County Court found, and we concur, that the police went to defendant's residence to search for certain specified checks pursuant to a validly issued search warrant. While engaged in that search they observed and seized a pair of glasses, a raincoat and a jacket which were believed to have been worn by defendant during the commission of the crime for which he was tried and convicted. The majority would suppress those items on the ground that their presence on the premises was anticipated by the police and their seizure did not, therefore, come within the "plain view" exception to the warrant requirement *(see, People v Spinelli,* 35 NY2d 77, 80). There is nothing in the record to suggest that the police anticipated discovery of the articles in question and thereby used the search warrant as a subterfuge to conduct an otherwise impermissible search *(see, supra).* It is one thing for the police to assume that personal articles of clothing used during the commission of the crime "might" be on the premises as opposed to having a factual basis to afford "probable cause" to believe that such items will be present at the time of the issuance of the warrant. Nothing in the record suggests that the police possessed such knowledge at the time they applied for and obtained their warrant, and we disagree with the majority's conclusion that the police could have included those items in the warrant request without such a factual predicate. Therefore, once the police were lawfully in defendant's residence pursuant to the warrant, they were justified in seizing those items that they observed in "plain view" and which they

had reason to believe constituted evidence of the crime they were investigating *(see, People v Jackson,* 41 NY2d 146, 150).*

We agree with the majority that defendant's other claims of error are without merit and we would, therefore, affirm the judgment of conviction.

YESAWICH JR. and CASEY, JJ., concur with HARVEY, J.; CREW III, J., and MIKOLL, J. P., dissent in a separate opinion by CREW III, J.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Albany County for a new trial.

---

* It should be noted that the caveat to the "plain view" exception enunciated in *Coolidge v New Hampshire* (403 US 443) is no longer viable, as the Supreme Court has recently held that the 4th Amendment does not prohibit the warrantless seizure of evidence in plain view even though the discovery is not inadvertent *(see, Horton v California,* 496 US 128).