Bellacosa, J.
(dissenting). Appellant, 13 years of age, was detained at the Port Authority Bus Terminal at approximately 9:00 p.m. on a week night, on suspicion of being a runaway. We are unanimous that the detention of this teenager was justified and lawfully conducted under Family Court Act § 718. A few minutes after she was escorted by a Port Authority police officer to the Youth Services Unit at the Terminal, she set down her large, black, canvas, knapsack-type bag in the walkway in the specially designated room. She took a seat some 15 feet away. A second officer picked up the *946 bag to move it out of the way. He felt the unmistakable outline of the butt and trigger guard of a gun. His concerns were then also confirmed by the detaining officer. We are also unanimous that up to that point the officers’ actions were lawful. However, the legal characterization and consequences of what occurred next divides us. When the officers then opened the bag, they saw four handguns (two 9mm semiautomatic; one .38 caliber semiautomatic; and one .44 caliber revolver) and 150 rounds of ammunition. The majority holds that opening the bag violated the juvenile’s Fourth Amendment rights.
The Family Court and the Appellate Division denied suppression of the seized miniarsenal. This Court granted leave to appeal. I agree with the result of the two courts below and therefore respectfully dissent and vote to affirm the order of the Appellate Division for essentially the same rationale applied by the Appellate Division.
That Court plainly did not adopt or rely on the so-called "plain touch” doctrine in this case. Thus, the forced application of this doctrine here, as the decisive template, is puzzling. That semantical phrase should be just a shorthand for one of the factors that contribute to any probable cause determination. If the factor is derived from a lawful and justified action, as here, it ought to be considered with all the rest of the probable cause features. It should not be discarded on a per se semantical analysis.
In upholding the seizure and the resulting juvenile delinquency determination of the Family Court, the Appellate Division used a traditional analysis. The officer in this case, after routinely and legally touching the juvenile’s bag, inadvertently became aware that it contained dangerous contraband. He verified his acquired knowledge by having another officer check the outside of the bag, also by lawful actions. Their reasonable and lawful activity, along with the entire assembly of surrounding circumstances in this situation, provided a probable cause basis to take further reasonable actions, including in these circumstances opening to check that bag in that public place. Ultimately, the safety of the officers and the public was at stake there, and to propound a protocol that requires making a formal arrest in order to qualify for an incident search (compare, People v Diaz, 81 NY2d 106 [decided today]) or suspending all action to secure a warrant in these circumstances is unnecessarily restrictive. That approach ele *947 vates form over substance in the typically active setting of the Port Authority Youth Services Unit.
The net practical effect of this and like cases requires officers and lower courts empowered with fact-finding authority to jettison their sound appraisal of the entire collection of data and developments of the varied and dangerous encounters involved. That is not warranted under sensible, settled, constitutional law principles.
Basically, the Court seems to be erecting a set of rigid regimes. Presumably, the officers could have held, examined or seized the juvenile’s knapsack and its contents in any number of other lawful ways, e.g., if they arrested her and did an incident search; if the bag were in her proximate "grabbable” area within the youth facility; if a fear for safety was reasonably perceived (an explosive potential, for example); if a regulation or magnetometer were in place to check all bags in the secure unit, as is done at airports and some courthouses and schools; if a proper inventory of held property procedure were in place; if the teenager were held for a longer period, perhaps overnight, while the police secured a warrant; if the police got consent or information by lawfully questioning her; if other exigent circumstances were present; or if several other categorical exceptions were evoked. I do not see why the police actions taken here must fit rigidly into one of the litany of authorized exceptions, so long as they reasonably approximate one or more of the traditional allowances for nonwarrant searches and seizures — as they did in this case.
In sum, the reversal approach taken by the Court in this juvenile delinquency case is not only analytically infirm but precedentially dangerous, since it compels the police to perform their job duties with timidity when confronted with situations reasonably affecting the public’s and their own personal safety. The police in such circumstances should not be left with no realistic alternative except to return an arsenal of dangerous and illegal weapons and ammunition to a child courier.
Chief Judge Kaye and Judges Simons, Titone and Hancock, Jr., concur in memorandum; Judge Bellacosa dissents and votes to affirm in an opinion; Judge Smith taking no part.
Order reversed, etc.