OPINION OF THE COURT
Hancock, Jr., J.
The question is whether the warrantless search of defendant’s pocket was justified by information allegedly obtained by the police in conducting an authorized protective pat-down (see, Terry v Ohio, 392 US 1) which demonstrated that defendant was unarmed. The People urge that the warrantless search of the pocket was permissible under an extension of the plain view exception to the warrant requirement, sometimes referred to as the "plain touch” exception. For reasons to be explained, we reject the People’s proposed extension of the plain view exception and conclude that justifying the warrantless search on the basis of the items felt during the protective pat-down would he contrary to both the State and Federal Constitutions (see, US Const 4th Amend; NY Const, art I, § 12). Accordingly, there should be a reversal.
*108 I.
There was evidence at the suppression hearing that on June 29, 1989, Officers John Healey and Clark Gordon were patrolling the lower east side of Manhattan at about 4:30 a.m. when they observed several groups congregating on the sidewalks, apparently passing objects from hand to hand. During a 20-minute period, Healey and Gordon, in the course of patrolling the area, observed defendant at various times at the center of several of these groups. In their final pass through the area, the officers saw defendant standing next to a stopped automobile. When their squad car approached, defendant walked away down the sidewalk.
The police drove alongside defendant and called him over to the car. In walking toward the car, defendant repeatedly placed his hand in his pocket despite Officer Healey’s warnings against doing so. As defendant reached the car, Healey noticed a bulge in defendant’s pocket and again told defendant to remove his hand. Fearing a weapon, Healey grabbed defendant’s pocket. He felt no weapon but did detect what "appeared to be a bunch of vials”. Defendant attempted to flee, but, according to Healey, he was able to grab hold of defendant through the car window and pull him partially into the car. While doing so, Healey reached into defendant’s pocket and removed 18 vials of crack cocaine. Defendant was then placed under arrest.
The trial court granted the motion to suppress the drugs seized from defendant’s pocket, holding that the initial stop and pat-down were not supported by reasonable suspicion. The Appellate Division reversed and denied the motion. Contrary to the trial court, it found that there was reasonable suspicion to justify the stop and pat-down. The Appellate Division held, in addition, that the subsequent search and seizure of the drugs were permissible based on what Officer Healey felt during the pat-down. We disagree.
II.
Preliminarily, we note that the Appellate Division’s determination that Officer Healey had reasonable suspicion to stop defendant and conduct a protective pat-down is supported by evidence in the record and is thus beyond this Court’s further review. The only legal issue before us is whether, as the Appellate Division held, the information allegedly obtained by Officer Healey through his sense of touch in conducting the *109 pat-down justified the subsequent search of defendant’s pocket. This law issue was the ultimate predicate for the Appellate Division’s reversal and, thus, this case is appealable under CPL 450.90 (2) (a).
It is fundamental that warrantless searches and seizures are per se unreasonable unless they fall within one of the acknowledged exceptions to the Fourth Amendment’s warrant requirement (see, United States v Place, 462 US 696, 701; Katz v United States, 389 US 347, 357). Here, the question concerns the justification for a search extending beyond the degree of intrusion authorized by the exception to the warrant requirement for protective pat-downs under Terry.
There can be no question that reaching into defendant’s pocket and seizing the drugs were not within the scope of the Terry pat-down. Under both the State and Federal Constitutions, the protective pat-down exception to the warrant requirement authorizes a limited search of lawfully detained suspects to determine whether a weapon is present (see, Terry v Ohio, 392 US 1, supra; People v Cantor, 36 NY2d 106, 110-111; People v Rivera, 14 NY2d 441). The narrow scope of the intrusion authorized during a protective pat-down may not exceed what is necessary to ascertaining the presence of weapons (Terry, supra, at 25-26; People v Torres, 74 NY2d 224, 229-231). Once an officer has concluded that no weapon is present, the search is over and there is no authority for further intrusion (see, Ybarra v Illinois, 444 US 85, 92-94; Sibron v New York, 392 US 40, 65-66; People v Roth, 66 NY2d 688, 690; 3 LaFave, Search and Seizure § 9.4 [c], at 524 [2d ed]). Therefore, in this case, because Officer Healey knew that defendant’s pocket did not contain a weapon, he was not authorized to search the pocket or seize its contents absent application of some other exception to the warrant requirement.
It is clear that the search did not come within the exception to the warrant requirement for searches incident to an arrest; defendant was arrested after the search.[1] Nor is it claimed that exigent circumstances justified the warrantless search. *110 Rather, the People ask us to hold that the subsequent search of defendant’s pocket was justified by an extension of the recognized plain view exception to the warrant requirement (see, Horton v California, 496 US 128; Arizona v Hicks, 480 US 321; People v Basilicato, 64 NY2d 103; People v Spinelli, 35 NY2d 77). In sum, the People urge that there should be a so-called "plain touch” exception to the warrant requirement— analogous to that for plain view — for concealed articles incidentally felt through clothes or other covering during a lawful touching. We conclude that the claimed analogy to the plain view exception does not withstand analysis.
Under the plain view doctrine, if the sight of an object gives the police probable cause to believe that it is the instrumentality of a crime, the object may be seized without a warrant if three conditions are met: (1) the police are lawfully in the position from which the object is viewed; (2) the police have lawful access to the object; and (3) the object’s incriminating nature is immediately apparent (see, Horton, supra, at 136-137; Hicks, supra, at 326-327). The plain view doctrine, it must be emphasized, establishes an exception to the requirement of a warrant not to search for an item, but to seize it. Because the item is already in the open where it may be seen, the owner can have no expectation of privacy in its concealment and, thus, its viewing cannot be a search under article I, § 12 or the Fourth Amendment. As stated by the Supreme Court in Horton:
"If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. Arizona v. Hicks, 480 U.S. 321, 325 (1987); Illinois v. Andreas, 463 U.S. 765, 771 (1983). A seizure of the article, however, would obviously invade the owner’s possessory interest. Maryland v. Macon, 472 U.S. 463, 469 (1985); Jacobsen, 466 U.S., at 113. If 'plain view’ justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by *111 seizures rather than by searches” (id., at 133-134 [footnotes omitted]).
Thus, the fundamental justification for the plain view doctrine is that when the police are already lawfully in a position to make the observation, the discovery and seizure of contraband in plain view involve no intrusion on the individual’s constitutional rights beyond that already authorized by the warrant or some exception to the warrant requirement (see, Horton, supra, at 134-137; Coolidge v New Hampshire, 403 US 443, 465).
The theory underlying the justification for the plain view exception cannot logically be extended to concealed items which are discoverable only through touch. Here, the concern is not with an exception to the warrant requirement to seize items which are already in plain view, but with an exception to the warrant requirement to search for items not in plain view. Unlike the item in plain view in which the owner has no privacy expectation, the owner of an item concealed by clothing or other covering retains a legitimate expectation that the item’s existence and characteristics will remain private. The physical characteristics of the concealed objects are immediately apparent to no one and are discernible through touch, if at all, only to the person who touches. Because the identity and nature of the concealed item cannot be confirmed until seen, what must be justified by the People’s proposed exception is a further search. This, of course, is not true for an item in plain view where no justification for a search is required and the additional intrusion, if there is one, is to the owner’s possessory interest, not to a privacy expectation (see, Coolidge, supra, at 465-466; Horton, supra, at 136-137).
The fundamental premise of the plain view exception — i.e., that items in plain view may be seized without an intrusion greater than that already authorized — is an invalid assumption if the plain touch exception is applied. For, even if the intrusion inherent in the initial act of touching is entirely authorized, the discovery and seizure of the items will entail a further intrusion. Indeed, it is for this further intrusion that justification is sought.
Thus, the essential conditions which justify an exception to the requirement of a warrant to seize an object in the plain view of the police, simply cannot exist to justify an exception to the warrant requirement for a search for a concealed object *112 which is not in plain view. Indeed, the very concept of "plain touch” is a contradiction in terms: the idea of plainness cannot logically be associated with information concerning a concealed item which is available only through the sensory perceptions of someone who touches it.
Our determination to reject the People’s proposed extension of the plain view exception is compelled by practical considerations as well as logic. The identity and criminal nature of a concealed object are not likely to be discernible upon a mere touch or pat within the scope of the intrusion authorized by Terry. While in most instances seeing an object will instantly reveal its identity and nature, touching is inherently less reliable and cannot conclusively establish an object’s identity or criminal nature (see, State v Dickerson, 481 NW2d 840 [Minn 1992], cert granted — US —, 121 L Ed 2d 22; State v Broadnax, 98 Wash 2d 289, 654 P2d 96 [1982]). Moreover, knowledge concerning an object merely from feeling it through an exterior covering is necessarily based on the police officer’s expert opinion — a type of knowledge which cannot be equated with information obtained by seeing it.
Finally, an opinion of a police officer that the object touched is evidence of criminality will predictably, at least in some circumstances, require a degree of pinching, squeezing or probing beyond the limited intrusion allowed under Terry. The proposed "plain touch” exception could thus invite a blurring of the limits to Terry searches and the sanctioning of warrant-less searches on information obtained from an initial intrusion which, itself, amounts to an unauthorized warrantless search (see, State v Collins, 139 Ariz 434, 438, 679 P2d 80, 84 [1983] [a "plain touch” exception would "invite the use of weapons’ searches as a pretext for unwarranted searches, and thus to severely erode the protection of the Fourth Amendment”]). We do not believe that such a "bootstrapping” justification for warrantless searches can be countenanced under the State or Federal Constitution.[2]
*113 Our decision today is consistent with decisions from other State jurisdictions rejecting the purported "plain touch” exception (see, e.g., State v Collins, supra; Dunn v State, 382 So 2d 727 [Fla 1980]; State v Dickerson, supra; State v Rhodes, 788 P2d 1380 [Okla 1990]; Commonwealth v Marconi, 408 Pa Super 601, 597 A2d 616 [1991]; State v Broadnax, supra).
Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to suppress physical evidence granted, and the indictment dismissed.

. There is no finding either at the hearing court or at the Appellate Division that this was a search incident to an arrest. Indeed, the only argument advanced by the People at the hearing court to justify the search was that "when he [the officer] pats the pocket and feels the crack vials, he’s now at the point where the level is stepped up and can go in and take the vials”, the same argument the People now advance in this Court. Moreover, the hearing court made no finding that defendant was restrained prior to or *110 contemporaneous with the search of his pocket. On the contrary, the court found that defendant walked to the patrol car with "his hands in his trousers’ pocket and was asked to remove his hands which he did, and again as he continued to approach the vehicle, he put his hands back in his pocket and at this point, the officer made a grab at the defendant’s pocket and felt what appeared to be vials of cocaine, vials in his pocket. He then reached into his pocket and retrieved the vials” (emphasis added).

. The conclusions that the drugs seized from defendant should have been suppressed and that there is no "plain touch” exception to the warrant requirement rest on our analysis of applicable Federal authority (see, US Const 4th Amend; Horton v California, 496 US 128, supra; Arizona v Hicks, 480 US 321, supra; Ybarra v Illinois, 444 US 85, supra; Coolidge v New Hampshire, 403 US 443, supra; Sibron v New York, 392 US 40, supra; Terry v Ohio, 392 US 1, supra). We reach the same conclusions independently by analysis and application of our own State law based on New York authorities supplemented by decisions of other States (see, NY Const, art I, § 12; *113 People v Torres, 74 NY2d 224; People v Roth, 66 NY2d 688; People v Basilicato, 64 NY2d 103; People v Spinelli, 35 NY2d 77; People v Rivera, 14 NY2d 441; see also, e.g., State v Dickerson, 481 NW2d 840, supra; State v. Broadnax, 98 Wash 2d 289, 654 P2d 96, supra). Our decision to reverse, therefore, while based on our analysis of Federal law, rests equally on an independently adequate State ground (Michigan v Long, 463 US 1032, 1041-1042; see, People v Stith, 69 NY2d 313, 316).