Titone, J.
(dissenting). Acknowledging that there was not *596 even a "reasonable suspicion” of criminality, the Court nevertheless holds that the school security guard was entitled to conduct a search of appellant’s book bag. In so ruling, the Court has reduced the privacy protections of the Fourth Amendment and of article I, § 12 of the State Constitution below all previously recognized minimum thresholds. While I too am horrified by the recent escalation of deadly weapons in the public schools, I cannot agree that the problem should be remedied by a contraction of even the minimal privacy rights that the Supreme Court has accorded to school children, particularly when there exist other, less intrusive remedies. Since I can find no constitutionally sanctioned justification for this invasion of an individual student’s right to the privacy of his personal effects, I dissent from the Court’s decision to uphold the search in this case.
It is undisputed that the security guard’s actions in this case in feeling the outside of appellant’s school bag constituted a full-blown search for purposes of constitutional analysis. Indeed, after our holdings in People v Diaz (81 NY2d 106) and Matter of Marrhonda G. (81 NY2d 942), which were premised on the Federal and State Constitutions (People v Diaz, supra, at 112-113, n 2), that characterization is no longer open to question in this State (but see, People v Lewis, 82 NY2d 839 [characterizing a feel of a shirt that was not on the suspect’s person as a "handling”]; cf., Minnesota v Dickerson, 508 US —, 113 S Ct 2130).
Further, although the point is not explicitly recognized by the majority, there can be little doubt that, but for its occurrence in a school setting, this warrantless search, like any other, would have to be supported by both a showing of probable cause and a recognized exception to the warrant requirement (e.g., People v Diaz, supra; Matter of Marrhonda G., supra). The teaching of New Jersey v T. L. O. (469 US 325), on which the majority places heavy reliance, is that search warrants are not constitutionally required for school searches and that such searches may be justified by a lesser showing of reasonable suspicion (see also, People v Scott D., 34 NY2d 483). Nothing in T. L. O., however, suggests that the serious intrusion of a search may be upheld on even less than reasonable suspicion, much less on the gossamer thread of what the Court has labelled an "unusual” metallic thud. The majority’s attempt to justify its decision to do so here is singularly unpersuasive.
*597 The majority begins its analysis with the premise that the "investigative touching” of the outside of appellant’s book bag was somehow "far less intrusive” than other types of searches. This premise, however, is irreconcilable with the holding and analysis in People v Diaz (supra). In Diaz, this Court specifically stated that such an "investigative touching” of a closed container requires "a degree of pinching, squeezing or probing beyond the limited intrusion allowed under Terry [v Ohio (392 US 1)]” (81 NY2d, at 112, supra; see also, Matter of Marrhonda G., supra).[1]
Further, the majority’s analysis is objectionable because it blurs the all-important distinction between searches and such lesser forms of intrusion as limited Terry patdowns (see, Terry v Ohio, supra) — a result that the Diaz Court expressly refused to sanction (81 NY2d, at 112). In the past, the courts have been willing to permit incursions not intrusive enough to be deemed full searches or seizures upon a showing of reasonable suspicion rather than probable cause (see, Delaware v Prouse, 440 US 648; Pennsylvania v Mimms, 434 US 106; United States v Brignoni-Ponce, 422 US 873; Terry v Ohio, supra; People v Hollman, 79 NY2d 181; People v De Bour, 40 NY2d 210). However, once it has been determined that a particular police action rose to the level of a "search” or a "seizure,” neither the Supreme Court nor this Court has been willing to subdivide that characterization into subcategories related to the degree of the intrusiveness or to use such a subdivision as a basis for reducing the required probable cause showing (see, Dunaway v New York, 442 US 200; People v Diaz, supra; Matter of Marrhonda G., supra; cf., Camara v Municipal Ct., 387 US 523).[2] Indeed, the majority’s reference here to an *598 "investigative touching” is reminiscent of the "investigative detention” doctrine that was rejected in Dunaway v New York (supra).[3]
What the majority has done here, in effect, is to dilute the recently minted Diaz-Marrhonda holding. According to this majority, the touching of a closed container for the purpose of discovering possible criminality is a "search” in some technical sense but is not the type of search that would require probable cause in the nonschool setting — or reasonable suspicion in the school setting as permitted by T. L. O. Rather, it is some hybrid form of police action that is labelled a "search” but may be treated as some lesser form of intrusion for purposes of determining the required constitutional knowledge predicate.
Notably, this dilution of the Diaz-Marrhonda holding cannot be justified on the ground that the search in this case occurred in a school setting (see, majority opn, at 594). While that circumstance may distinguish this case from Diaz with regard to whether probable cause or reasonable suspicion is the proper standard, it does not affect the degree of intrusiveness of the authorities’ conduct. Manifestly, if a particular action is intrusive enough to be considered an unqualified search when it occurs on the street or in a store security office (People v Diaz, supra; Matter of Marrhonda G., supra), the same action must also be deemed an equally intrusive unqualified search when conducted in a school. And, the previously recognized standard applicable to such an action — probable cause in a street encounter or reasonable suspicion in a school encounter — should be used to measure the constitutional propriety of the intrusion.
The majority also attempts to justify its decision on the theory that appellant had only a "minimal” expectation of privacy "regarding the outer touching of his school bag” when he left it with a security officer pursuant to a school policy (majority opn, at 593). This sweeping conclusion, however, remains unexplained. Significantly, the Supreme Court has specifically rejected the contention that a child has a drasti *599 cally diminished expectation of privacy in articles of personal property that are carried into school. In T. L. O. (supra, at 338), the very case on which the majority relies, the Court stated that neither the "maintenance of a sound educational environment” nor the "minimal interest of the child in bringing any items of personal property into the school” is sufficient to justify that conclusion. As the Court noted, "schoolchildren may find it necessary to carry with them a variety of legitimate, noncontraband items, and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds” (id., at 339). Similarly, neither a waiver of the right to privacy nor a diminution in the expectation of privacy may be inferred from the fact that a student, acting in accordance with the rules of the school, has temporarily relinquished the closed container he used to carry his personal effects in order to obtain an entrance pass.
The appropriate balance between "the schoolchild’s legitimate expectations of privacy and the school’s equally legitimate need to maintain an environment in which learning can take place” (id., at 340) was carefully and deliberately struck in T. L. O. by permitting searches conducted without warrants and on reasonable suspicion rather than probable cause (id., at 339-343). That balance is skewed in a manner never contemplated by the T. L. O. Court when the notion of a reduced expectation of privacy is injected as a basis for effecting an even greater reduction in the constitutional privacy protections afforded to students.[4]
A further reason offered by the majority for reducing the quantum of information necessary to conduct a school search such as this one is the unquestionably compelling need to prevent the introduction of hand guns and other lethal weapons into the schools. I find this aspect of the majority’s rationale unconvincing for several reasons. First, the reduc *600 tian of students’ privacy rights that the majority sanctions is not narrowly tailored to address weapon-related criminal activities. While the search in this case happened to disclose a weapon, the sequence of events that led to that disclosure here could just as easily lead in another case to the discovery of some other illegality or rule infraction such as the possession of drugs (cf., People v Diaz, supra) or cigarettes. Second, there exist other, more effective means of interdicting weapons in public schools, namely, the installation of metal detectors at the front door. Thus, the need to control the burgeoning weapon crisis is, at best, a questionable rationale for such a serious incursion on students’ constitutional rights.
Third, and most importantly, the constitutional privacy guarantees in our Federal and State Constitutions exist precisely to protect citizens from governmental overreaching in the name of the exigencies of law enforcement. It is circular to rely on the contemporary exigencies of law enforcement as grounds for justifying reductions in the constitutional protections. It is also somewhat dangerous, since the same rationale may be trotted out to justify virtually any governmental excess that is aimed at a currently troublesome or rampant form of crime (see, e.g., People v Keta, 79 NY2d 474 [auto theft]; Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57).
Contrary to the majority’s views, it would seem that the need for judicial intervention to bolster the privacy protections would concomitantly increase, rather than diminish, with an increase in the public pressure on law enforcement authorities to take all necessary steps to obliterate a new crime threat. As has been said in an analogous context, "[o]ur responsibility in the judicial branch is not to respond to these temporary crises or to shape the law so as to advance the goals of law enforcement, but rather to stand as a fixed citadel for constitutional rights” (People v Keta, 79 NY2d 474, 501).
What the majority seems to overlook is the fact that there was no way of knowing until after appellant’s bag was palpated and searched that it contained a dangerous weapon rather than a video game or some other harmless device commonly carried by high school students. The privacy protections of the State and Federal Constitutions have little worth if the balancing analysis they dictate allows consideration of the nature of the items disclosed as a result of the police intrusion. Such an analysis sacrifices the rights of the inno *601 cent to an extent that I find unacceptable. Indeed, a recent incident in which an entire fifth grade class was frisked after two teachers discovered that money was missing from their wallets (Albany Times Union [Associated Press], Nov. 12, 1993, at B2, col 1) highlights the double-edged nature of the balancing inquiry the Court has undertaken and demonstrates the need to accord more serious weight to the privacy side of the equation, even in the context of a school search.
Finally, even if it is assumed that some lesser showing than the reasonable suspicion approved by the Supreme Court is permissible in these circumstances, the majority has not given any indication of the nature of that showing or of what the lower limits of that showing might be. Even those who advocate a "flexible balancing of expectations” in Fourth Amendment analysis would acknowledge that "flexibility” does not sanction the elimination of any and all articulable standards.
As the majority concedes, a metallic "thud” is not in itself a suspicious occurrence, and in this case there were no other "surrounding circumstances” to elevate the level of founded suspicion that the security guard had before he undertook a search of the outside of appellant’s book bag. If, as the majority admits, the "thud” was not sufficient to furnish reasonable suspicion that the bag contained a gun, it is difficult to see how that "thud” could have "evidently suggested] to the school security officer the possibility that [the bag] might contain a weapon” (majority opn, at 593). The distinction between a "reasonable suspicion” and an "evident suggestion” is not at all clear to me and will probably be even less meaningful to the school authorities who have to implement this new standard. The significance of the majority’s reference to a "premonition” that is "less rigorous” than reasonable suspicion is even more opaque.
The closest the majority has come to actually objectifying the standard it has used is its characterization of the "thud” the guard heard as " 'unusual’ ” (majority opn, at 593). However, what made this sound so "unusual” is far from clear. Students’ book bags routinely contain such unexceptional items as make-up cases, portable cassette players and other consumer electronic devices, all of which would likely produce a metallic "thud” when dropped on a hard surface such as a counter.
Even more importantly, the "unusual” nature of an event or circumstance does not provide a sound basis for a search of *602 an individual’s personal effects. Without more, such an amorphous touchstone would permit intrusions on the most arbitrary of predicates, including a student’s "unusual” manner of dress, gait or speech.
In the final analysis, there really is no constitutionally acceptable predicate here for the investigative search of the outside of appellant’s book bag. The fact that the search eventually led to the discovery of a gun is certainly not a sound basis for upholding the search and, indeed, to the extent the majority relies on that circumstance, its analysis begs the question. While we all have a vital interest in preventing weapons from entering our public school classrooms, that interest could have been served in this case without seriously undermining the student’s constitutional rights by either asking the student about the contents of his bag upon his return (see, Matter of Marrhonda G., supra, at 945) or by insisting that he empty it or leave it with the guard before re-entering the building. In any event, while I do not advocate anything as sweeping as an over-all constitutional floor of "reasonable suspicion” that would be applicable in all situations (see, majority opn, at 594), I cannot concur in the majority’s decision to sustain this search on a showing that falls well below the minimum requirements approved by the Supreme Court for searches conducted on school premises.
Accordingly, I dissent and vote to reverse the judgment and Appellate Division order brought up for review.
Chief Judge Kaye and Judges Simons, Hancock, Jr., Bellacosa and Smith concur with Judge Levine; Judge Titone dissents in a separate opinion.
Judgment of Family Court appealed from and order of the Appellate Division brought up for review affirmed, without costs.

. The majority’s extended discussion of Terry, Diaz and Marrhonda G. (majority opn, at 594-595) is puzzling. Diaz did not apply Terry but rather held that the Terry justification for a limited patdown is inapplicable once a frisk of the suspect discloses that no weapons are concealed on his or her person (81 NY2d, at 109). While Diaz may not apply to the touching of the outside of a book bag after possession has been relinquished (majority opn, at 595), Marrhonda G., which involved precisely that situation, certainly does. The remaining variable, i.e., the school setting in which the present search took place, may serve to eliminate the need for a warrant and to reduce the level of individualized suspicion required, but it does not alter the character of the intrusion as a search.

. Camara v Municipal Ct. (supra), which the majority cites as an example of the Supreme Court’s rejection of the reasonable suspicion requirement, is unhelpful in this context. That case merely held that a showing of something less than probable cause is permissible for an inspec *598 tion of premises where the intrusion is "neither personal in nature nor aimed at the discovery of evidence of crime” (id., at 537).

. The majority’s assertion that this search was undertaken for the "special needs of school security and not for a criminal investigative purpose” (majority opn, at 594) is insupportable in view of the fact that the school officials suspected the presence of a gun or other weapon whose possession would clearly be outlawed under the provisions of the Penal Law.

. It is unclear what precise legal significance the majority attaches to the T. L. O. Court’s decision to leave open the question whether "individualized suspicion is an essential element of the reasonableness standard * * * adoptfed] for searches by school authorities” (469 US, at 342, n 8; see, majority opn, at 593). The majority’s own suggestion that it may not require such individualized suspicion either in a school setting or, indeed, in any other Fourth Amendment context, is extremely disturbing because it is both so sweeping and so unnecessary to the analysis herein. I fear that this obiter dictum, which is introduced as mere makeweight here, will be seized upon and cited in future cases to justify even further invasions of citizens’ privacy rights.