OPINION OF THE COURT
Charles H. Solomon, J.
Defendant, charged with the murder of his wife on December 16, 1996, has moved for suppression of, inter alia, physical evidence seized from inside his apartment on the day of his arrest. A hearing on defendant’s motion was held before me on September 25 and 26, 1997.
Findings of Fact
On December 16, 1996, the defendant contacted the Police Department to report that his wife was missing from their apartment at 1365 York Avenue. On December 20, 1996, Carole Wasserman’s body was unearthed from a shallow grave behind the defendant’s place of business in New Jersey. On Saturday morning, December 21, 1996, at approximately 4:20 a.m., Detective William Flannery appeared in Manhattan Criminal Court to obtain an arrest warrant for the defendant and a search warrant for his apartment. One hour later, Flannery arrived at 1365 York Avenue and took defendant into custody.
Following defendant’s arrest and removal from his apartment to the precinct, Sergeant Maroney and other detectives participated in the execution of the search warrant. Sergeant Maroney testified that he was aware that there were numerous stab wounds on the victim’s naked body and that a nightgown was found nearby. Believing that Mrs. Wasserman had been killed in her bedroom, Sergeant Maroney decided to look for a *316 knife, one of the eight items specified in the search warrant, in the master bedroom. In doing so, he turned over the mattress and noticed that a piece of cardboard had been taped over a large hole cut out of the underside of the mattress, probably to hide bloodstains.
Maroney also notified the New York Police Department Crime Scene Unit, and Detective Hal Sherman responded to the Wasserman apartment to assist in the investigation and the execution of the search warrant. WTien Detective Sherman, an expert in the field of evidence collection and preservation, arrived at 1365 York Avenue, as per his standard procedure, he first walked through the entire apartment, then took photographs, prepared a diagram, and finally looked for serological evidence.
WTiile walking around the master bedroom, Detective Sherman noticed two small spots on the wall above the nightstand which he immediately recognized as blood. After taking photos, Sherman cut out the section of the wall containing the spots to be later submitted to the Medical Examiner’s laboratory for testing. In addition, Sherman saw what he thought to be a spot of blood on the inside of the curtain next to the bed. Photos of this spot were also taken and that piece of the curtain was cut off with a scalpel to be submitted for testing. Although Detective Sherman did not recall whether the spot he observed was on the inside or the outside of the curtain, it is apparent from the photos that it was on the inside. Sherman also noticed an apparent blood spot on the base of the lamp on the nightstand. Again, photos were taken and the base of the lamp was removed to be submitted for testing.
Because he saw bloodstains on the wall above the nightstand, on the base of the lamp on the same nightstand, and on the adjacent curtain, Detective Sherman testified that he expected to find bloodstains on the carpet in that area. However, when Sherman visually examined that area of carpet, it appeared much cleaner to him than the rest of the bedroom carpet, as if it had been recently cleaned. Finding this to be significant, Sherman cut out a piece of carpet from the area near the nightstand as well as a control sample of the same carpet from the area near the entrance to the bedroom which appeared to him to be more worn and not as clean. Sherman also noticed a Jiffy steam cleaner inside a bathroom and, suspecting it might have been used to clean bloodstains from the carpet, seized it for later serological testing and comparison with any cleaning fluid in the carpet sample.
*317 Conclusions of Law
Defendant asserts various claims concerning the property seized from his apartment on the morning of December 21, 1996. No present claim is made regarding the eight items described in the search warrant, as this court, in a decision and order dated March 11, 1997, has previously ruled that the search warrant was in all respects properly issued. Rather, defendant’s claim in his motion and at the hearing is that the items not described in the search warrant, but which were seized by Detective Hal Sherman of the Crime Scene Unit, must be suppressed. In support of this claim, defendant advances the following arguments. First, he contends that Detective Sherman was not lawfully present in defendant’s apartment during the execution of the search warrant because he did not know the contents of the warrant and was not looking for the items specified therein. He also claims that because the police were fully aware of the nature of the victim’s injuries and the fact that she was found naked and buried with her nightclothes, they suspected she had been stabbed in her own bedroom and should have sought a warrant to search the apartment for evidence of blood. Furthermore, even if Sherman’s presence at the scene was lawful, defendant contends that the evidence seized by Sherman does not fall within the plain view exception to the warrant requirement because its discovery was not inadvertent but expected, given police knowledge of the circumstances of the victim’s demise.
The People seek to introduce five items of physical evidence not named in the search warrant which were seized from the defendant’s apartment at the time of the warrant’s execution: the mattress from the bed; a fragment of the bedroom wall containing suspected bloodstains; a piece of the bedroom curtain containing a suspected bloodstain; a piece of the bedroom carpet next to the bed which appeared to have been recently cleaned; and a Jiffy steam cleaner machine suspected of being used to clean the bedroom carpet. It is the People’s contention that the warrantless seizure of these items is justified by the “plain view” doctrine, as most recently discussed by the Court of Appeals in People v Diaz (81 NY2d 106, 110 [1993]): “Under the plain view doctrine, if the sight of an object gives the police probable cause to believe that it is the instrumentality of a crime, the object may be seized without a warrant if three conditions are met: (1) the police are lawfully in the position from which the object is viewed; (2) the police have lawful access to the object; and (3) the object’s incriminating nature is immediately apparent [citations omitted].”
*318 The People argue that all three of the conditions listed in Diaz (supra) were met: (1) all of the police officers, including Detective Sherman, were lawfully present in the defendant’s apartment conducting a search pursuant to a warrant duly issued by a Magistrate; (2) the police officers and detectives engaged in executing the warrant had lawful access to the evidence seized; and (3) the incriminating nature of the evidence was readily apparent. The defendant argues that the seizure of the evidence was not justified by the plain view doctrine because (1) Detective Sherman was not lawfully in the defendant’s apartment; (2) the seizure was not inadvertent but expected; and (3) the incriminating nature of the evidence was not readily apparent because only further scientific testing would establish its nature.
Detective Sherman testified that he was present in the defendant’s apartment along with other officers executing a search warrant. In a prior decision issued on March 11, 1997, this court upheld the warrant which authorized entry of the police into defendant’s apartment for the purpose of searching for and seizing certain enumerated items such as a shovel, knives and clothing. There was no mention in the warrant of blood or serological evidence. Defendant argues that because Detective Sherman went to the apartment as a serology expert to search for serological evidence rather than for the enumerated items, he was not lawfully on the premises. This argument is related to defendant’s second objection to the application of the plain view doctrine, that is, that the discovery of such evidence must be “inadvertent” and not anticipated.
In making these arguments, defendant relies upon People v Spinelli (35 NY2d 77 [1974]) in which the Court of Appeals rejected the use of the plain view exception to justify the warrantless seizure of a stolen truck parked behind the defendant’s house. Citing Justice Stewart’s plurality decision in Coolidge v New Hampshire (403 US 443 [1971]) which held that, under Federal law, objects seized in plain view must not be anticipated, but must come into plain view inadvertently, the Court in Spinelli found no justification in the plain view doctrine for the seizure of the truck. However, this court notes that the police officers in Spinelli never sought a search warrant for the truck or any other evidence on Spinelli’s property, despite knowing of the truck’s location for four months, and they seized the truck from behind the house immediately after arresting the defendant in front of the house for an unrelated crime. Therefore, quite apart from the issue of inadvertence, the offi *319 cers had no legal right to intrude into the rear of Spinelii’s property for the purpose of seizing the truck, even if it was visible from a lawful vantage point.
In the instant case, the situation is entirely different from Spinelli (supra). Detective Sherman was present in defendant’s apartment along with other officers engaged in the proper execution of a valid search warrant. Although Detective Sherman testified that he had not read the warrant or been informed of its contents, defendant cites no authority for his contention that such lack of knowledge renders the detective’s presence or purpose illegal. In this court’s view, the fact that Detective Sherman, a crime scene expert, responded to assist in the execution of a valid search warrant, renders his presence entirely lawful and proper. That is so regardless of whether he had the specific intent to search only for delineated items or whether he intended to use his expertise to search for other incriminating evidence.
While not controlling, it is certainly significant that the United States Supreme Court has explicitly disavowed the inadvertence requirement set forth in Coolidge (supra) as a matter of Federal law. (Horton v California, 496 US 128 [1990].) In Horton (at 138-139), the Court reasoned that: “The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement * * * [I]f [the officer] has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful seizure for the first.”
In my view, although the Court of Appeals has not explicitly so held in a case involving a search warrant, the element of inadvertence, required when Spinelli (supra) was decided, is no longer necessary in New York to seize evidence pursuant to the plain view exception. (See, People v Diaz, supra, at 110; see also, People v Laws, 208 AD2d 317 [1st Dept 1995]; People v Shepard, 169 Misc 2d 517 [Sup Ct, NY County 1996, Uviller, J.].) In setting forth the elements of the plain view doctrine in Diaz, I note that the Court of Appeals omitted any mention of inadvertence. Moreover, in analyzing the rationale for the plain view exception and applying it to the facts in that case, the court adopted much of the Supreme Court’s reasoning in Horton (supra).
*320 Defendant nevertheless argues that inadvertence is still required in New York, citing People v McCullars (174 AD2d 118 [3d Dept 1992]) and People v Farmer (198 AD2d 805 [4th Dept 1993]). This court does not find these precedents persuasive as the Third Department repeatedly cites Spinelli and the Fourth Department cites the Third, and both decisions predate Diaz (supra; see also, People v McMahon, 238 AD2d 834 [3d Dept 1997]).
In Diaz (supra), the Court of Appeals refused to expand the plain view exception to include “plain touch”, that is, to permit the seizure of a concealed item incidentally felt during a lawful touching. In so holding, the Court explained that the plain view exception applies, not to the search for evidence, but rather to its seizure. If the evidence is already in the open and visible to the police from a lawful vantage point, there is no privacy interest implicated by its viewing, and, although the seizure “ ‘invade [s] the owner’s possessory interest’ ”, the intrusion on constitutional rights is no greater. (Supra, at 110, citing Horton v California, supra, at 133-134.) However, the Court decided that to allow the seizure of concealed evidence which is, by definition, not in plain view but whose nature is merely suspected from a lawful touching, would abrogate the owner’s legitimate privacy interest which is manifested by the fact of concealment.
In this court’s view, the analysis in Diaz (supra) regarding seizure of a concealed item applies equally well to the seizure of an item not enumerated in a search warrant. So long as the officer views the item from a lawful vantage point without conducting a further search, the additional intrusion on the owner’s Fourth Amendment rights occasioned by its seizure is permitted. Divining the officer’s state of mind, his knowledge of the contents of the warrant or his specific purpose is not required, for, as the Supreme Court stated in Horton (supra, at 138): “evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer.”
However, should the officer, despite being lawfully on the premises, engage in a further search for an item not enumerated in the search warrant and not open to plain view, the seizure of such an item would not be permitted. In this case, Sherman’s search for blood evidence by looking behind a curtain which faces the wall is similar to the search of the defendant’s pocket in Diaz (supra), and seizure of such a con *321 cealed item would not fall within the plain view exception. Such a result would also be necessitated by the third requirement of the plain view doctrine, that is, that the item’s incriminating nature be “immediately apparent”.
With regard to this third factor, defendant argues that none of the suspected blood evidence was properly seized because its true nature could not be discovered without scientific testing, and its incriminating nature was therefore not immediately apparent. Since the rule has long been that even a lay witness may attest to the nature of a stain as being blood (Greenfield v People, 85 NY 75 [1881]), this court rejects the argument that the presence of blood cannot be apparent to an expert in crime scene investigations, absent scientific testing.
Accordingly, I find that four of the five items of evidence seized by Detective Sherman from defendant’s apartment are admissible as having been lawfully seized pursuant to the plain view doctrine. However, as to one of the items, the suspected bloodstain on the inside of the curtain, I find that it was not in plain view since Sherman would have had to search behind the curtain to find it.